UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON BORGES,<br><br>   Plaintiff,<br><br>   v.<br><br>U.S. BANK; U.S. BANCORP, a Delaware Corporation; and Does 1–25, inclusive,<br><br>   Defendant. | No. 2:12-cv-2427 TLN AC<br><br>**ORDER** |

This matter is before the Court on Defendant U.S. Bank National Association's ("U.S. Bank" or "Defendant") motion for summary judgment in this employment discrimination case under the California Fair Employment and Housing Act (FEHA) (Def. U.S. Bank Nat'l Ass'n's Mem. P. & A. in Supp. of its Mot. Summ. J. ("Mot. Summ. J."), ECF No. 20-1.) Specifically, Defendant contends there is no genuine dispute of material fact on Plaintiff's hostile-work-environment and constructive-discharge sexual harassment claims. Plaintiff opposes the motion, (Mem. P. & A. in Opp'n to Summ. J. Mot. ("Opp'n"), ECF No. 22), and Defendant has filed a reply, (Def. U.S. Bank Nat'l Ass'n's Reply to Pl.'s Opp'n to its Mot. Summ. J. ("Reply"), ECF No. 26). Finding that oral argument would not be of material assistance, *see* E.D. Cal. L.R. 230(g), the matter was submitted on the briefs, (ECF No. 27). The Court has carefully considered

the arguments presented by both parties.  For the reasons set forth below, Defendant's motion is GRANTED IN PART, and DENIED IN PART.

## BACKGROUND[1]

Plaintiff Sharon Borges was employed as a bank teller at Defendant's U.S. Bank branch within a grocery store in Lodi, California.  (Pl.'s Resp. to Def.'s Separate Statement of Undisputed Material Facts ("Pl.'s Resp. to Def.'s SUMF") ¶¶ 1–2, ECF No. 24 ("Admit.").)  Plaintiff alleges that she was constructively discharged as a result of sexual harassment and discrimination, in violation of the California Fair Employment and Housing Act (FEHA), that occurred over the course of several months from July through November of 2011.  (Def.'s Notice of Removal, Ex. A ("Compl."), ECF No. 1.)  Specifically, Plaintiff alleges she was the victim of a hostile work environment created by the unwelcome sexual advances of her supervisor, the Lodi branch's general manager, Dennis Singh.  (*Id.* ¶¶ 8–9.)  Plaintiff was hired in 2010 to work at the Lodi branch, and Singh was assigned to manage the branch in June 2011.  (Pl.'s Resp. to Def.'s SUMF ¶¶ 1, 4.)

Soon after Singh was assigned to the Lodi branch, his behavior began to make Plaintiff feel "extremely uncomfortable."  (Dep. Sharon Borges 48:20–49:10, Aug. 22, 2013, ECF No. 23.)  He followed Plaintiff into the vault (or safe) several times a day.  (*Id.* at 38:17–39:22.)  This vault is only 2.5 feet wide by 3-to-4 feet deep.  (Decl. Linda Allen ¶ 5, ECF No. 20-4.)  On one occasion, Singh followed Plaintiff into the vault, closed the door, and turned off the lights. (Pl.'s Resp. to Def.'s SUMF ¶ 13.)  Singh stopped following Plaintiff into the bank vault after Plaintiff complained to the Branch Manager.  (*Id.* ¶ 14.)

Singh also regularly called Plaintiff into his office for "coaching sessions."  (*Id.* ¶ 10.)  These "coaching sessions" consisted of Singh discussing his unhappiness with his wife, (Dep. Borges 63:12–14); how "hot" Singh found Plaintiff to be; how "lucky" Singh thought Plaintiff's boyfriend was; and how Singh thought Plaintiff "could do better," (*id.* at 63:11–12, 64:14–16; *accord* Pl.'s Resp. to Def.'s SUMF ¶ 8).

---

[1] The following factual background is drawn from the parties' submitted evidence and their respective statements of undisputed material fact.  The facts contained in this section are undisputed for purposes of summary judgment unless specifically stated.

2

On another occasion, as Plaintiff walked past Singh at work, he pushed his crotch against her as she passed by and made a grunting sound. (Pl.'s Resp. to Def.'s SUMF ¶ 6.)

In August 2011, Plaintiff submitted an anonymous complaint to U.S. Bank about Singh's behavior by calling its "Ethics hotline." (Pl.'s Resp. to Def.'s SUMF ¶ 15.) According to the U.S. Bank "Ethics Issue Response" form, the caller reported that "Singh followed him/her into the vault and stood very close and stared. Caller asked Mr. Singh what he was staring at and he responded 'your hair.'" (Decl. Allen, Ex. B, ECF No. 20-4.) The caller also said, "Singh turned off the lights while in the vault." (*Id.*) The caller also complained about Singh's "call[ing] him/her into his office for coaching [to] ask[] personal questions." (*Id.*) The caller also complained about the fact that Singh had "told caller he was going to cut another employees' hours," and that all the employees "should look for other jobs because they were on their way out." (*Id.*)

In addition to complaining to the "Ethics hotline," Plaintiff called the District Manager, Amanda Meyer, to inquire about a transfer to another location. (Dep. Sharon Borges 27:2–25, Aug. 22, 2013, ECF No. 23.) Plaintiff testified at her deposition that she "wanted to transfer because [she] couldn't work in the same branch with Dennis [Singh] because of the harassment issues." (*Id.* at 28:13–16.)[2]

U.S. Bank Human Resources Manager, Linda Allen, investigated Plaintiff's complaint to the "Ethics hotline." She interviewed Plaintiff, two other bank tellers, Singh, and the District Manager, Amanda Meyer. Based on these interviews, Allen concluded that U.S. Bank's policies had not been violated. (Decl. Linda Allen ¶ 7; *accord* Pl.'s Resp. to Def.'s SUMF ¶ 16.)

In November 2011, Plaintiff went out on short-term disability leave. She spoke to a workman's compensation doctor who told her she "couldn't return to work" and that she "was to seek further therapy . . . ." (Dep. Borges 32:4–23.) Seven months later, in April 2012, Allen wrote to Plaintiff and explained that U.S. Bank had no documentation for her continued absence,

---

[2] Defendant objects to Plaintiff's testimony as to the word "harassment" under Federal Rule of Evidence 602, arguing this term is an "[i]mproper legal conclusion . . . given by a lay witness." (Def.'s Objections to Ev. Submitted by Pl. ¶ 3, ECF No. 26-2.) Since the Court finds that Plaintiff's opinion that she was "harassed" is "rationally based on [her] perception" and "not based on . . . specialized knowledge" but instead common sense, Fed. R. Evid. 701, Defendant's objection is OVERRULED.

3

1  and that if Plaintiff did not tell U.S. Bank when she expected to return to work by May 11, 2012,
2  she would be terminated for abandoning her job.  (Pl.'s Resp. to Def.'s SUMF ¶ 19.)

3  Plaintiff wrote Allen on May 9, 2012, to ask if there were any other positions in the Lodi
4  area.  Plaintiff said in the letter: "I would be willing to transfer to a different branch in my area
5  where Dennis Singh is not working.  I have documentation from two doctors saying I can not or
6  should not work in the Lodi branch with Dennis Singh due to the wrongful sexual solicitation."
7  (Decl. Linda Allen, Ex. C, ECF No. 20-4.)  Allen sent Plaintiff an email in reply expressing her
8  confusion on May 11, 2012:

> Sharon, at this point I am a little confused as to what your status is. You indicated that you are still disabled and you faxed me documentation from your doctor with a disability end date of June 15, 2012. In our conversation and your letter you indicated that you might be ready to return to work.  You also asked about unemployment insurance.  Please work with your doctor to determine what your status is and let me know so I can help you with the next steps.

(Decl. Allen, Ex. D, ECF No. 20-4.)

Plaintiff replied to Allen's email as follows:

> Dear Linda [Allen],
>
> The letter you sent me stated that if I did not have disability papers to you by [M]ay 11th I would be terminated as of that date.  I did have my doctor fax you those documents and when I contacted the [disability insurance provider] Hartford they said my FMLA benefits have been exhausted and that I would need to return to work.
>
> When I contacted you on [M]ay 9th by phone I asked if I could return to work at a location nearby where Dennis Singh was not working.  You said that my position had been filled and there were no current openings at the Stockton branches.
>
> . . . .
>
> Since I am no longer an employee of US Bank I am asking that you contact my attorney . . . if you have any further questions.
>
> Thank you,
> Sharon Borges

(*Id.*)

In August 2012, Allen sent Plaintiff a letter stating that because Defendant "received no

4

further information" regarding Plaintiff's "continued absences," "[t]his letter will confirm your voluntary termination of employment with U.S. Bancorp effective June 19, 2012." (Decl. Allen, Ex. E, ECF No. 20-4.)

Plaintiff filed suit in San Joaquin County Superior Court, and Defendant removed to this Court on the basis of diversity jurisdiction, (Def.'s Notice of Removal ¶¶ 5–8, ECF No. 1), and filed the pending motion for summary judgment, (ECF No. 20).

## STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates no genuine dispute exists as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. Summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish the existence of a genuine dispute as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is instead required to proffer evidence of specific facts in the form of affidavits, or other admissible evidence, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact

5

1  in contention is material, i.e., a fact that might affect the outcome of the suit under the governing
2  law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine,
3  i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *id.*
4  at 251–52.

5        To establish the existence of a factual dispute, the opposing party need not establish a
6  material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be
7  shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."
8  *First Nat'l Bank*, 391 U.S. at 289.  Thus, the "purpose of summary judgment is to 'pierce the
9  pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
10 *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963
11 amendments).

12       In resolving the summary judgment motion, the court examines the pleadings, depositions,
13 answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ
14 P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the
15 opposing party is to be believed, and all reasonable inferences that may be drawn from the facts
16 placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.
17 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
18 produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight*
19 *Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

20       Finally, to demonstrate a genuine dispute of material fact that necessitates a trial, the
21 opposing party "must do more than simply show that there is some metaphysical doubt as to the
22 material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find
23 for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586–87.

24       **B.**      **Applicable Law**

25       "When interpreting state law, federal courts are bound by decisions of the state's highest
26 court."  *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 427 (9th Cir. 2011) (citations omitted)
27 (quoting *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir.
28 2004)).  "In the absence of such a decision, a federal court must predict how the highest state

1  court would decide the issue using intermediate appellate court decisions, decisions from other
2  jurisdictions, statutes, treatises, and restatements as guidance." *Id.*

## ANALYSIS

Plaintiff asserts Defendant subjected her to sexual discrimination in the form of a hostile work environment and that she was constructively discharged in violation of California's FEHA. Plaintiff seeks damages for loss of earnings and emotional distress; Plaintiff also seeks punitive damages among other incidental relief. Defendant moves for summary judgment on these two claims and argues Plaintiff cannot recover punitive damages as a matter of law. These issues are discussed in turn below.

### A.   Hostile Work Environment

Plaintiff seeks damages against Defendant for a sexually hostile work environment while employed by Defendant. Defendant moves for summary judgment on Plaintiffs' hostile work environment sexual harassment claims asserted under California's Fair Employment and Housing Act (FEHA), Cal. Gov't Code §§ 12940 *et seq.*

FEHA makes it an unlawful employment practice for an employer to sexually "harass an employee." Cal. Gov't Code § 12940(j)(1); *accord Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 277 (2006) (quoting Cal. Gov't Code § 12940(j)(4)(C)). The California Supreme Court has held that FEHA's "prohibition against sexual harassment includes protection from a broad range of conduct, ranging from expressly or impliedly conditioning employment benefits on submission to or tolerance of unwelcome sexual advances, to the creation of a work environment that is hostile or abusive on the basis of sex." *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 461 (2005). "To prevail on a hostile work environment claim under California's FEHA, an employee must show that the harassing conduct was 'severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009) (quoting *Miller*, 36 Cal. 4th at 462). "There is no recovery 'for harassment that is occasional, isolated, sporadic, or trivial.'" *Id.* (quoting *Lyle*, 37 Cal. 4th at 283).

Neither Plaintiff nor Defendant point to a binding California Supreme Court opinion on

point. Accordingly, this Court looks to intermediate appellate decisions and decisions from federal courts to assist it with its task to "predict" how California's "highest state court would decide." *Trishan Air, Inc.*, 635 F.3d at 427. The Court finds the U.S. Supreme Court's and Ninth Circuit's decisions in the Title VII context particularly persuasive in this endeavor, because in evaluating FEHA claims of hostile-work-environment sexual harassment, the California Supreme Court "frequently turn[s] to federal authorities interpreting Title VII of the Civil Rights Act of 1964," *Miller*, 36 Cal. 4th at 463, and usually relies on U.S. Supreme Court and Ninth Circuit decisions when it does so, *id.* (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65 (1986)); *id.* at 466 (citing *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 897 & n.3 (9th Cir. 1994)).

Several isolated incidents of "rude, inappropriate, and offensive behavior" are "insufficient to constitute a hostile work environment," *Mokler v. Cnty. of Orange*, 157 Cal. App. 4th 121, 145 (2007); but repeated and pervasive incidents—even a series of well-intentioned compliments—can establish a hostile work environment claim. The Ninth Circuit's decision in *Ellison v. Brady* illustrates the application the hostile work environment doctrine to analogous facts. 924 F.2d 872 (9th Cir. 1991). The female plaintiff in *Ellison* was subjected to the following unwanted sexual advances by her male coworker: the coworker "asked her out"; "handed [her] a note"; and eventually "mailed her a card and a typed, single-spaced, three page letter." *Id.* at 873–74. The plaintiff "told her supervisor that she was frightened and really upset," and she "requested [a] transfer . . . because she would not be comfortable working in the same office with him." *Id.* at 874. After her employer investigated and after attempts to transfer the male coworker failed,[3] the plaintiff received yet another letter in which her coworker "maintain[ed] the idea that he and [the plaintiff] had some type of relationship," and she filed a complaint against her employer in federal court. *Id.* at 874–75. The district court granted the defendant's motion for summary judgment, holding the plaintiff "had failed to state a prima facie case of sexual harassment due to a hostile work environment." *Id.* at 875. The Ninth Circuit

---

[3] The plaintiff and coworker worked at the IRS's office in San Mateo, and after the IRS transferred the coworker to the San Francisco office, he filed a grievance with the union. As part of the settlement between the IRS and the union, the coworker was transferred back to San Mateo "provided that he spend four more months in San Francisco and promise not to bother Ellison." *Ellison*, 924 F.3d at 874.

1  reversed.

2  In reversing the district court's decision to grant the employer's motion for summary judgment, the Ninth Circuit noted "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* at 878; *accord Mokler*, 157 Cal. App. 4th at 142 ("The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'"). The court also clarified that the "focus" of the inquiry is "on the perspective of the victim," not the alleged harasser. *Id.* The court reasoned that "[a] male supervisor might believe, for example, that it is legitimate for him to tell a female subordinate that she has a 'great figure' or 'nice legs.' The female subordinate however may find such comments offensive." *Id.* (quoting *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 898 (1st Cir. 1988)). Applying the objective "reasonable victim standard" to the facts of the case, the court in *Ellison* reasoned that even though the alleged harasser may have wished "no more than to woo [plaintiff] with his words," the court could not "say as a matter of law that [plaintiff's] reaction was idiosyncratic or hyper-sensitive." *Id.* at 880. The court held that because the plaintiff "had no way of knowing what [her coworker] would do next," a "reasonable woman could consider [his] conduct . . . sufficiently severe and pervasive to alter a condition of employment and create an abusive working environment." *Id.*

In contrast, in *Mokler*, a California intermediate court of appeal rejected the plaintiff's hostile work environment FEHA claim premised not on frequent and persistent harassment, but instead on "three occasions over a five-week period." 157 Cal. App. 4th at 144. In *Mokler*, a female county employee asserted a FEHA hostile work environment claim against the County of Orange and one of its Supervisors, Norby, with whom she interacted "on an almost daily basis." *Id.* at 131. On three occasions, Norby harassed plaintiff: (1) Norby asked Mokler if she was married, and when she said no, replied, "So you're the aging nun"; (2) he touched her arm and pulled her against him; and (3) he put his arm around her and "rubbed her breast with his arm." *Id.* at 131–32. After the jury returned a verdict for the plaintiff, the California court of appeal reversed, concluding these three acts "fall short of . . . a pattern of continuous, pervasive harassment." *Id.* at 145. The court reasoned "Norby did not supervise Mokler or work in the

9

same building with her," and the second of the three incidents "did not occur at work." *Id.* Ultimately, the court held these three incidents over a brief period were not "sufficiently severe or pervasive to alter the conditions of [Mokler's] employment and create an abusive working environment." *Id.* at 145–46; *see also Haberman v. Cengage Learning*, 180 Cal. App. 4th 365, 385–86 (2009) (holding that "brief and isolated comments" to plaintiff with no single "instance of alleged sexual harassment involv[ing] any physical conduct" was not "sufficiently severe or pervasive to . . . create a work environment that qualifies as hostile").

Defendant argues summary judgment is appropriate on Plaintiff's hostile work environment claim for three reasons. First, it argues Plaintiff has produced no evidence of verbal or physical conduct of a sexual nature sufficient to "support a claim for harassment." (Mot. Summ. J. 7, ECF No. 20-1.) Second, Defendant argues there is no evidence that the alleged verbal and physical conduct was of a sexual nature or otherwise "ha[d] anything to do with Borges' sex." (*Id.* at 8.) Finally, Defendant argues a reasonable woman in Plaintiff's circumstance would not have considered the working environment to be abusive or hostile considering the totality of the circumstances. (*Id.* at 8–9). Plaintiff counters that Singh's behavior, including "consistently follow[ing] plaintiff in to the bank vault," was "inherently threatening under the circumstances of this case and any reasonable woman would so view it," particularly considering the "frequency" of the conduct, which Plaintiff testified occurred "on a daily basis" and "interfered with [her] work duties." (Opp'n 5, ECF No. 22.)

Here, Defendant's argument—that "there is no evidence" that Singh's behavior had "anything to do with Borges' sex"—does not find support in the evidence. Plaintiff testified that, on one occasion, Singh pushed his crotch against Plaintiff and grunted. (Pl.'s Resp. to Def.'s SUMF ¶ 6.) On another occasion, Singh followed Plaintiff into the bank's 2.5 by 3 foot vault and stood very close and stared; when Plaintiff asked Singh what he was staring at, he responded "your hair." (Decl. Allen Ex. B, ECF No. 20-4.) Moreover, the Court must evaluate these incidents in the context of the "totality of the circumstances," *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000), which in this case include conversations in which Singh expressed to Plaintiff his unhappiness with his wife, how "hot" he found Plaintiff, and Singh's comments

about Plaintiff's relationship with her boyfriend, (Dep. Borges 63:11–14, 64:14–16, ECF No. 23). Considering these incidents together with the totality of the circumstances, the Court finds a rational trier of fact could conclude Singh's behavior was "of a sexual nature." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590 (1989). The trier of fact may ultimately side with Defendant and conclude that Singh's comments are "more along the lines of someone trying to fit in, be nice or friendly, and create a collegial workplace," (Mot. Summ. J. 7); however, at this stage of the proceeding, the Court cannot conclude that this is the only reasonable inference to be drawn from this evidence. *See Rayzor v. United States*, 937 F. Supp. 115, 118 (D.P.R. 1996), *aff'd*, 121 F.3d 695 (1st Cir. 1997) ("[I]f the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party." (citing *Casas Office Mach. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 684 (1st Cir. 1994))).

Further, Defendant's argument—that isolated incidents (such as Singh's pushing of his crotch into Plaintiff while grunting and standing beside Plaintiff and touching her arm) are "not harassment as a matter of law" because "multiple incidents of sexual touching and innuendos are not" sufficiently severe to alter conditions of employment to constitute "unlawful harassment"—is contrary to precedent considering the frequency of Singh's behavior. (Mot. Summ. J. 6.) As discussed above, "the required showing of severity of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1096 (9th Cir. 2008) (alteration and internal quotation marks omitted) (quoting *Ellison*, 924 F.2d at 878). Here, Plaintiff testified that Singh's behavior, including commenting on her appearance and following her into the cramped confines of the bank vault, occurred nearly every day and several times each day. Thus, although Singh's conduct "fall[s] far short of physical abuse," *Davis*, 520 F.3d at 1096, the frequency of Singh's behavior—subjecting Plaintiff to daily uncomfortable interactions such as sharing a 2.5 by 3 foot space in a bank vault over the course of several months—is similar to the persistent love letters and date requests the Ninth Circuit held were sufficient to defeat summary judgment in *Ellison*, 924 F.2d at 880–81. Thus, because Singh's conduct occurred "repeatedly over the course" of Plaintiff's employment, this Court finds Plaintiff has shown Singh's conduct was "sufficiently hostile to overcome summary judgment."

1  *Davis*, 520 F.3d at 1096.

2  Moreover, Defendant's reliance on two California intermediate appellate decisions as persuasive authority, *Mokler* and *Haberman*, is misplaced because both cases are distinguishable from the facts in this case. The conduct at issue in *Mokler*—"three occasions over a five-week period," 157 Cal. App. 4th at 144—was significantly less frequent and pervasive than Plaintiffs' proffered evidence of Singh following Plaintiff into the vault nearly every day for several months. Further, the court in *Mokler* reasoned that the alleged harasser, "Norby[,] did not supervise Mokler or work in the same building wither her," *id.* at 145; whereas, in this case, not only did Singh supervise Plaintiff, they worked in the same cramped bank branch inside a grocery store and even occupied the same 2.5-foot-by-3-foot bank vault against Plaintiff's wishes, every day for months. Further, the vulgar and uncivil comments in *Haberman* are distinguishable from the offending conduct in this case because the comments directed at the plaintiff in *Haberman* were "brief and isolated . . . over the course of a two-or three-year period," 180 Cal. App. 4th at 385; thus, the actions in *Haberman* were not nearly as pervasive as Singh's daily incursions into the vault. Further, the conduct in *Haberman* was not nearly as severe as that in this case: the court in *Haberman* reasoned that not a single "instance of alleged sexual harassment involved any physical conduct," *id.*; whereas, in this case, Singh on one occasion thrust his crotch into Plaintiff and grunted. Thus, this case is unlike *Mokler* and *Haberman*, and more like *Ellison*.

Finally, applying the objective reasonable victim standard to the facts of this case on summary judgment, as in *Ellison*, this Court "cannot say as a matter of law" that Plaintiff's reaction to Singh's behavior "was idiosyncratic or hyper-sensitive." 924 F.2d at 880. On the contrary, a reasonable woman in Plaintiff's position—forced to share a 2.5 by 3 foot space with her male supervisor every day, to endure nearly daily comments on her appearance, and to tolerate a "crotch push" accompanied by a "grunting sound"—could consider Singh's conduct "sufficiently severe and pervasive to alter a condition of employment and create an abusive working environment." *Ellison*, 924 F.2d at 880.

Therefore, this Court finds a rational trier of fact could find for Plaintiff and denies Defendant's motion for summary judgment on Plaintiff's hostile work environment claim.

///

**B.     Constructive Discharge**

Plaintiff asserts she was constructively discharged because her conditions of employment effectively forced her to resign. (Opp'n 7, ECF No. 22.) Defendant moves for summary judgment on this claim, arguing the standard for constructive discharge claims is higher than for hostile work environment claims, and that Plaintiff "cannot meet the higher standard" to show "that the conditions of her employment were so intolerable that any reasonable employee would have resigned." (Mot. Summ. J. 11, ECF No. 20-1.) Plaintiff does not offer a specific argument, or point to evidence, in her opposition to Defendant's motion as it pertains to her constructive discharge claim; instead, it appears Plaintiff relies on the arguments and evidence she presents in her opposition to summary judgment on the hostile work environment claim. (*See* Opp'n 7.)

In the sexual harassment constructive discharge context, California courts follow federal law. *See, e.g.*, *Holmes v. Petrovich Dev't Co.*, 191 Cal. App. 4th 1047, 1062 (2011) (analyzing a sexual harassment constructive discharge claim under *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). "[T]o establish 'constructive discharge,'" the plaintiff must first establish a hostile work environment and then also "make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004). "In order to survive summary judgment on a constructive discharge claim, a plaintiff 'must show there are triable issues of fact as to whether 'a reasonable person in [her] position would have felt that [she] was forced to quit because of intolerable and discriminatory working conditions.'" *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1184 (9th Cir. 2005), *amended on denial of reh'g*, 433 F.3d 672 (9th Cir. 2006), *amended on denial of reh'g*, 436 F.3d 1050 (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994)). *See also Brooks*, 229 F.3d at 930–31 (requiring the plaintiff to meet a "higher standard" to survive summary judgment on a constructive discharge claim, as compared to a hostile work environment claim).

Working conditions become intolerable if they "deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal

1   motivation of a competent, diligent, and reasonable employee to remain on the job to earn a
2   livelihood and to serve his or her employer." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir.
3   2007) (quoting *Brooks*, 229 F.3d at 930). Courts "set the bar high for a claim of constructive
4   discharge because . . . antidiscrimination policies are better served when the employee and
5   employer attack discrimination within their existing employment relationship, rather than when
6   the employee walks away and then later litigates whether his employment situation was
7   intolerable." *Id.*

8   Here, as discussed above, Plaintiff has shown a genuine dispute of material fact exists,
9   precluding summary judgment on her hostile work environment claim. The issue, therefore, is
10  whether she can also meet the "higher standard" for constructive discharge to show she was
11  forced to quit because of intolerable and discriminatory working conditions, i.e., whether a
12  rational trier of fact could find a reasonable person in Plaintiff's position would have felt forced
13  to leave, *Hardage*, 427 F.3d at 1184.

14  The timing of a plaintiff's resignation and the severity of the harassment are two factors
15  courts look to in determining whether summary judgment is appropriate on a constructive
16  discharge claim. *Compare Montero v. AGCO Corp.*, 192 F.3d 856, 861 (9th Cir. 1999)
17  (affirming summary judgment for defendant, reasoning that, "[b]y the time Plaintiff resigned she
18  was not subject to intolerable working conditions," because "plaintiff testified that [the] sexually
19  harassing behavior had ceased three to four months before she left"), *with Patton v. Keystone RV*
20  *Co.*, 455 F.3d 812, 818 (7th Cir. 2006) (reversing summary judgment and remanding for trial
21  because "[t]he picture painted here is not that of an employee offended by a boorish supervisor,"
22  but instead, "a reasonable fact finder could agree with Patton's fear that her supervisor was an
23  obsessed man who—based on previous acts showing no regard for Patton's right to control who
24  could touch intimate areas of her body—was capable of, and desirous of, physically assaulting
25  her in a serious way."). For example, in *Montero*, the Ninth Circuit affirmed summary judgment
26  for the defendant because the plaintiff remained on the job for more than three months after the
27  harassment stopped and after the alleged harassers had been either fired or reprimanded. 192
28  F.3d at 861  The court analyzed these facts and concluded "no reasonable person in Plaintiff's

position would have felt forced to quit when she did." *Id.* In contrast, in *Patton*, the plaintiff immediately quit while the alleged harassment was still ongoing and never returned to work, and the court held triable issues precluded summary judgment. 455 F.3d at 815. Moreover, in *Patton*, the court was persuaded by the severity of the harassment: the alleged harasser "was always leering at her, staring at her body as she knelt, crouched, and bent over while working," he "touched [plaintiff] inappropriately," on one occasion "he slid his hand under [the plaintiff's] shorts and up her inner thigh," and as a result, the plaintiff "began to have panic attacks." *Id.* at 814. The court reversed summary judgment and remanded for trial concluding "a reasonable fact finder could find that Patton should have quit immediately to protect herself." *Id.* at 818.

Here, the Court finds the timing of Plaintiff's resignation distinguishes this case from *Montero* and makes this case similar to *Patton*. Unlike *Montero*, there is no evidence that Defendant fired Singh or that Plaintiff remained on the job for months after the harassment had stopped. On the contrary, like the plaintiff in *Patton*, Plaintiff in this case left work while the harassment was ongoing to go on short-term disability leave and to receive medical treatment and therapy. (Dep. Borges 32:4–23.) *Cf Patton*, 455 F.3d at 814 ("Patton began to have panic attacks"). Further, in *Patton*, the plaintiff asked to be transferred away from the alleged harasser, and when her employer refused, she "went home, and never returned to work." *Id.* at 815. So too here. Plaintiff asked U.S. Bank's Regional Human Resource Manager, Linda Allen, "to transfer to a different branch in my area where Dennis Singh is not working" because Plaintiff claimed to have "documentation from two doctors saying I can not or should not work in the Lodi branch." (Decl. Allen, Ex. C, ECF No. 20-4.) As in *Patton*, after Plaintiff's request for a transfer was turned down, she never returned to work. A fact finder could reasonably infer "these [were] the actions of someone who finds h[er] working conditions so intolerable that [s]he felt compelled to resign." *Poland*, 494 F.3d at 1185.

Moreover, the severity of the conduct in this case is similar to the severity of the harassment in *Patton*. In *Patton*, the alleged harasser was "always leering at" the plaintiff and "staring at her body" as she worked; and in this case, as Plaintiff worked in the bank branch and periodically went inside the vault, Singh would follow her inside and "stand there just staring at

15

[her]." (Dep. Borges 37:23–38:6, ECF No. 23-1.) In *Patton*, the alleged harasser touched the plaintiff's inner thigh; here, Singh "pushed his private parts up behind [Plaintiff] . . . while . . . making sounds." (*Id.* at 51:20–23.) In *Patton*, the plaintiff suffered from panic attacks; here, Plaintiff was referred to a psychiatrist who placed her on short-term disability. In short, taking all reasonable inferences in favor of Plaintiff, the Court finds that a fact finder could find that a reasonable person in Plaintiff's position "should have quit immediately to protect herself." *Patton*, 455 F.3d at 818.

Moreover, this conclusion is consistent with the Ninth Circuit's admonition that "a determination of constructive discharge is normally a factual question left to the trier of fact." *Poland*, 494 F.3d at 1184. *See also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) ("In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses.").

Therefore, the Court finds "there are triable issues of fact . . . whether 'a reasonable person in [Plaintiff's] position would have felt that [she] was forced to quit because of intolerable and discriminatory working conditions,'" *Hardage*, 427 F.3d at 1184, and denies Defendant's motion for summary judgment on Plaintiff's constructive discharge claim.

**C.     Punitive Damages**

Plaintiff seeks, among other relief, punitive damages, and Defendant moves for summary judgment on Plaintiff's punitive damages claim. Defendant argues Plaintiff "cannot show . . . that any managing agent at U.S. Bank committed any acts of malice, oppression or fraud against her." (Mot. Summ. J. at 12, ECF No. 20-1.) Plaintiff counters that Human Resources Manager, Linda Allen's, "failing or refusing to interview key witnesses ratified the behavior" of Plaintiff's supervisor, the branch manager, Dennis Singh. (Opp'n 7, ECF No. 22.) Plaintiff further argues Allen's investigation made the situation "worse because it created the impression that something was happening." (*Id.* at 8.)

California permits recovery of punitive, or "exemplary," damages only if the plaintiff

shows "oppression, fraud, or malice . . . in addition to actual damages" by "clear and convincing evidence." Cal. Civ. Code § 3294(a).  Moreover, a corporate employer is liable for punitive damages for acts of its employee only if one of its managing agents "authorized or ratified the wrongful conduct for which [actual] damages are awarded."  *Id.* § 3294(b).  California's punitive damages statute was designed "to prevent liability from attaching for the reckless or negligent employment of an injuring employee."  *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1151 (1998) (discussing the legislative history).  "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Liberty Lobby, Inc.*, 477 U.S. at 254.

Punitive damages may be awarded against an employer for sexual harassment committed by an employee only if (1) the employer "had advance knowledge" that its employee "was likely to sexually harass employees" such as the plaintiff and (2) the employer "exhibited conscious disregard for the rights and safety of others by failing to take reasonable steps to prevent . . . misconduct."  *Weeks*, 63 Cal. App. at 1159.  Here, Defendant does not dispute that it had knowledge of Singh's behavior through Plaintiff's complaint and Linda Allen's investigation of Singh's alleged harassment; thus, the only issue is whether U.S. Bank consciously disregarded Plaintiff's rights and safety by failing to take reasonable steps to prevent misconduct.

The California First District Court of Appeal's decision in *Weeks v. Baker & McKenzie* teaches that multiple complaints by multiple employees against a particular coworker, over the course of several years, is sufficient to warrant punitive damages.  For example, in *Weeks*, the court found that the managing agents of a law firm had advance knowledge that a particular partner was likely to sexually harass female employees because the firm had received multiple complaints from several employees about that particular partner's sexual harassment over the course of five years.  *Id.* at 1138–45.  In response, the firm took no formal or informal corrective or preventative actions of any kind, and the court of appeal affirmed the jury judgment awarding punitive damages.  *Id.* at 1160.

Here, Plaintiff's proffered evidence does not rise to the level of clear and convincing evidence of "oppression, fraud, or malice" on the part of a managing agent at U.S. Bank; at most,

17

this evidence creates a genuine dispute of material fact that U.S. Bank was negligent in continuing to employ Singh and for failing to transfer Plaintiff.  Even viewing the evidence in the light most favorable to Plaintiff, this case is distinguishable from *Weeks* because U.S. Bank took at least some steps to correct Singh's behavior or prevent it from continuing.  For example, it is undisputed that Singh stopped following Plaintiff into the bank vault after Plaintiff complained to the Branch Manager.  (Pl.'s Resp. to Def.'s SUMF ¶ 14, ECF No. 24.)  Moreover, it is undisputed that U.S. Bank's H.R. Manager investigated Plaintiff's complaint.  Although a reasonable employer could have done more sooner, California does not permit the imposition of punitive damages against an employer for "the reckless or negligent employment of an injuring employee."  *Weeks*, 63 Cal. App. 4th at 1151.  Thus, a reasonable trier of fact could not find, by clear and convincing evidence, that Defendant "exhibited conscious disregard for the rights and safety" of Plaintiff.  *Id.* at 1159.

Therefore, Defendant is entitled to summary judgment on Plaintiff's punitive damages claim, and this portion of its Motion is GRANTED.

**CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment (ECF No. 20) is DENIED IN PART on Plaintiff's hostile work environment and constructive discharge claims, and GRANTED IN PART on Plaintiff's punitive damages claim.

IT IS SO ORDERED

Dated: February 6, 2014

Troy L. Nunley
United States District Judge